The 4th District Appellate Court of the State of Illinois has now convened. The Honorable Thomas M. Harris presiding. Good morning, this is case number 4-24-1630, Alexis Eddington v. City of Springfield. First, may we have appearances for the appellant? Good morning, your honor. Michael Hampleman, attorney for the appellant. All right, thank you. And for the appellate? Good morning, Frank Lynch for the appellate. Mr. Hampleman, you may proceed with your argument. Thank you, your honor. Thank you to opposing counsel and also thank you to Mr. Bailiff. Your honors, at its core, this case is about the limits of a municipality's duty when it undertakes a limited action in response to a hazard and the reach of statutory immunity under the Tort Immunity Act. The record is clear. I will not, unless the court would prefer so, I will not bring out the facts again, but the main facts that I want to point out to the court is that the City of Springfield did not own the roadway, the City of Springfield did not own the pole, nor did the City of Springfield maintain the roadway or the pole. The City of Springfield officer did not undertake to clear the hazard, but merely just reported it to the appropriate authority. And the law, I would say particularly after Frye, as well as West, and as well as Newsom, makes it clear that any duty is limited to the extent of the undertaking and, in any event, the City is immune under Section 3-104 for any alleged failure to provide roadways. Mr. Hamilton, may I, just as a preliminary matter, ask you to clarify something? This matter preceded the bench trial, right? I'm sorry. We did have a bench trial in this matter, correct, in which the bench trial, the judge cited against the City, which is the basis for the appeal. So the issue for review before the court is, did the trial court err when it held that the City of Springfield owed a duty to the plaintiff pursuant to negligent undertaking? And also, did the trial court err when it held that the City of Springfield owed a duty to warn of a hazardous road condition, notwithstanding the immunity provided by the 745 ILCS 10-3-104? Well, my question was just simply, this matter proceeded to a bench trial, right? Yes. Yes, Your Honor, it did. That is correct. Okay. And in terms of the evidence presented, this is where I was somewhat confused in looking at the record. Did witnesses testify? Your Honor, the only witness that would have testified in this case was Ms. Alexis Eddington, the plaintiff in this matter. So that witness did testify at trial. Other than that, all of the facts surrounding this case were so stipulated, too. Mr. Lynch, please correct me if I'm wrong in asserting that, but the only witness that we would have had in this case at trial was Ms. Alexis Eddington. All right. If I may... Counsel, excuse me. We'll just need to proceed in order here. And if Mr. Hampleman doesn't know, he can tell me this. So there was one live witness, you're saying? Yes, that is correct, Judge. Okay. And then the remainder of the evidence, it came by way of stipulation of facts. And I've reviewed that. But was there other evidence presented? At the trial, Your Honor, no. I do not believe that any other evidence had been presented other than what is already provided to this court and the appendix. Okay. You may proceed with your argument. Thank you, Your Honor. So, as I was saying, the core issue with this case is did the City of Springfield voluntarily assume a duty that is so broad that it also included warning motorists? And also, can the City be liable for not setting up barriers for warning signs? Mr. Hampleman? Excuse me for interrupting you. I'd like to start by focusing really on the issue of immunity. Because regardless of the undertaking, if indeed the City is immune, that may dispose of the matter. This court issued a minute order asking counsel to be prepared to discuss two 2nd District cases that had not appeared in the briefs. And so, I wanted to start with that. With respect to the 2nd District case, Castorina v. Browning Ferris Industries of Illinois, 237 Illap 3rd 702, the 1992 case. Does that case support the City's argument that the defendant is immune from plaintiff's allegations of negligence? And if so, why? Absolutely. And thank you for that question, Your Honor. I appreciate the court's notion of that case. I know that we did discuss West. However, we did not really discuss the Castorina cases. However, to answer your question, Your Honor, without wasting much more of the court's time. So, the newer Castorina case, I would argue, it's revisited after West. It focuses on whether the City's knowledge removes the immunity. But ultimately, the newer Castorina case says that West controls and that immunity is absolute. Which is what I would argue helps certainly show the court how the trial court made an error in this case. Because before Castorina and the older Castorina case, we'll call it the predecessor. It reversed the directed verdict for the City based on the City's knowledge of hazard from prior accident. But it predates West. So, whenever the West case came around, West case certainly clarified that notion to which the newer Castorina case revisited that notion. And ultimately, the newer Castorina case said that West controls and it also said that immunity is absolute. So, all that in a roundabout way, Your Honor, of answering your question. Yes, I do think the newer Castorina case would provide the City with the immunity as it relates to this incident. Alright, and then focusing back on the trial court and the findings of the trial court. The trial court did focus here on the fact that it found a high degree of foreseeability of an injury and felt that that supported the conclusion that Section 3104 does not apply. Was that reasoning flawed? And if so, why? Your Honor, I do believe that that reasoning is flawed based on the fact that the immunity is absolute under West. I would argue that knowledge, duty, those things are irrelevant after the West case. However, even if we were to play into the reliance and the foreseeability of the matter, I would still argue that the trial court made an error in ruling against the City as it relates to that notion. Thank you. Thank you, Your Honor. So, big picture, the City's actions were limited. The City had called CWLP to move the poll, period. There's no evidence that the City increased the danger. There's also no evidence that plaintiffs relied on the City having done more. So, therefore, we would argue that statutory immunity is absolute here. There were a few cases that have been discussed by both our side and also opposing counsel. So, I would say that Frye, Pippin, and Cross are probably the three biggest ones as it relates to the scope of the voluntary undertaking, which under Frye, the holding was that the duty extends only to the extent of the undertaking and no more. So, in that case, the City is making the argument that the undertaking would have been the undertaking to call CWLP and get the poll from the road. Yes, Your Honor. Sorry. I'm sorry. I thought that Your Honor had a statement. I apologize. So, the City called the utility to move the poll. They didn't undertake to do everything that was necessary in order to make the roadway safe. That's not the City's job. The poll was not owned by the City. The road was not maintained by the City either. Which brings me to the next point is that there was no increase in danger as it relates to the plaintiff. The City didn't make things worse by any of their actions. There was no increase in danger. The poll was still down in the road before the City police officer even made it out. Well, let me ask you, I was going to jump in before you, I guess, detected some body language there, but since the defendant's employees did respond to the scene themselves, they didn't call the State of Illinois, and they ultimately removed this poll from the roadway. Under these circumstances, didn't the defendant, really through its employees, voluntarily assume what otherwise would have been the State's obligation here to ensure the public's safety from this emergency? Your Honor, I would argue that the undertaking as it relates to the City only dealt with calling for the removal of the poll, which is what plaintiff is arguing led to their damages, to which, you know, ideally, in hindsight, they should have filed. I'm sorry. Why is it, why would you say, I mean, we analogize this, I believe, you do, to someone calling the Fire Department. Why would it be that limited? Well, because, Your Honor, if I'm walking down the road and I see a house on fire, arguably, I don't even have a duty to call to let someone know that that house is on fire. However... Well, wait a minute. You're talking about you as a civilian. We're talking about an employee who's a police officer. And, okay. A first responder. Yes, absolutely. So, even if it, you know, may be a first responder, let's say it's a public works person, any employee at the City. They're going to call the Fire Department, right? They're going to call whoever they need to in order to undertake this issue. However, I wouldn't expect a police officer or someone to run into a burning building without the proper parties being there in terms of being the Fire Department or someone more, someone more equipped in order to fight the fire and the analogy that you and I are discussing here. Well, he wouldn't have, or he or she wouldn't have left the scene before the Fire Department got there, would they? It's kind of hard to play because now we're getting into hypotheticals. However, I would agree with the court's notion that hopefully that the person would not leave the scene. However, in this case, you know, our officer left the scene after he'd called CWLP after what he believed to be the right course of action. How do we know any of that? The officer didn't testify, right? There's no affidavit. Where does this come from? How do we know anything about what the officer did? Your Honor, I believe that that was in the stipulated facts as it relates to the case and the officer's actions. I guess we will call it the nexus of the undertaking that the officer did undertake, which was, hey, there's this pole in the road. Who do I need to call to take care of it? Oh, I'm going to call CWLP because I think that's who would be the proper party to take care of the pole on the road, which is what the officer did. By doing that, he didn't increase the danger that was posed to plaintiff. And there's no evidence in the record that suggests that plaintiff or their passenger or anyone made any reliance on the actions of calling CWLP and asking for the pole to be removed from the road. Well, let me ask a hypothetical. Yes, Your Honor. Let's suppose there had been a one-car accident and the remains of the vehicle that was in the accident remained on the roadway. The police officer came and left after he called a wrecker. But then let's insert he decided to put flares out to mark the part of the vehicle that remained on the roadway. Would that be enough of an undertaking? And then calling for a wrecker to change? I understand it's hypothetical, but would that be enough? Are we still at the stage of absolute immunity? Your Honor, to call back to a law school professor, I think that you've heard this as well. It depends, right? I would say that if an officer affirmatively took an action, so like you mentioned, putting out flares, and if they did so negligently, then that might give rise to a claim based on the execution of the act and the flaws in the execution of the act. However, not for failing to provide warnings. Here, the officer didn't block the road. The officer didn't really set up any warnings or create any new hazard. He just simply called the utility as it relates to the pole to try to get the pole removed. But if it was a car, it wouldn't have anything to do with the utility company. It would have to do with vehicular traffic. And the police officer's responsibility, or one of his responsibilities, is to make things safe for vehicular traffic. That's why we patrol. That's why we give traffic tickets. That's why you get in trouble for following too close or speeding. It seems to me that once that vehicle is on the roadway, perhaps the duty or responsibility of the officer is increased. Once again, this is in a hypothetical. Yes, absolutely. As it relates to that hypothetical, I think it's helpful to point out the amendments made by the legislature in 1986, which we mentioned in our brief as well, where the legislator deleted the dangerous condition carve-out. And West also confirms that the immunity now applies regardless of notice or foreseeability. Well, that's helpful to you. It's not helpful to Mr. Lynch. Yes, absolutely. I'm sure that he will have something that is not helpful for me to point out as well, Your Honor. But... So the city simply called the utility. We'd use the analogy of a passerby. The actions were limited to contacting the utility. So that was the undertaking that was taken on by the city. There's no evidence that the officer undertook a more broad duty in order to protect the monitoring public, and nor could he have done so. Furthermore, I would argue that after West v. Kirkham and the amendments in 1986, notice or foreseeability does not repeal immunity under 3-104. The city could have had actual knowledge, but under the new amendments, they would still be immune for failure to provide warnings as it relates to the incident. Furthermore, there's zero evidence that anyone in the public, let alone plaintiff, relied on the city's response. Frye and Tipton are clear that there must be actual reliance or an actual increase in the hazard, which there's been no evidence of actual reliance, nor has there been any evidence of an actual increase in the hazard posed to Miss Eddington. Should the Tort Immunity Act be read more narrowly? I would argue that the Supreme Court in West addressed this question, and the General Assembly deleted the exception for dangerous, non-apparent conditions, now making the language absolute. The legislative intent of the 1986 amendments was quite clear to the Tort Immunity Act that the intent was to expand immunity, not to reduce immunity as it relates to municipalities. I think that's further clarified in the decisions that the Court made note of in the earlier Castorina case as well as the later Castorina case. On remand, the Court ended up finding that immunity still applied despite the city having actual notice. This is different from just failing to erect a stop sign because there is an existing hazard. However, the statute and also West v. Kirkham make no such distinction as it relates to existing failure to provide any warning or device, whether at the onset or after being notified is immunized under the statute and also under the West v. Kirkham law. Finally, as it relates to Castorina, I will concede that the first Castorina decision allowed liability with knowledge. However, that was also before the West decision was delivered. The later opinion, which was on remand after West, recognizes that the controlling authority is now the West case and immunity applies regardless of notice. Your Honor, I have no additional argument. Can I reserve my minute and a half for a rebuttal? You'll have additional time in rebuttal.  May it please the Court. Frank Lynch for the Plaintiff, Alexis Eddington. First, I want to talk about the facts a little bit. I apologize for interrupting earlier. That was in bad form. There are many things that were before the Court. Defense counsel missed that. There were affidavits of the city engineer. There was a deposition of the person from the CWLP, the electric company that came out and moved the pole. There was a deposition of a troubleshooter for CWLP. Traffic crash reports from both accidents that we stipulated into evidence and waived any hearsay. I'm the one that made the call. I want to make a reservation. There were audio recordings of Kirk Jacobs. There was an affidavit of the Plaintiff and the Plaintiff's testimony. There was a deposition transcript. Excuse me, Mr. Lynch. I apologize. I think we're having some difficulty with the connection here perhaps. I'm not sure. I hope it's not me. I'm sorry. Why don't you proceed? Sure. We have a deposition of the police officer who responded. Most importantly, we have a deposition of the person who solved the problem. Could you stop there for a minute? When you say you have a deposition of the police officer who responded, are you speaking of Officer Byrne? Yes. Brett Walters was the physician and there was... I'm looking at the exhibits that are in there and I thought there was, but there was not a deposition. That was a question I had when I went through the record. I didn't see anything, either documentary evidence aside from the accident, the traffic crash report. I didn't see anything in the way of testimony from Officer Byrne. Is that accurate? I think so. I think we did stipulate, however, to the contents of his Illinois traffic crash report and the traffic crash report from before. Objections were waived and that was certified. Also, we got an agreed statement of facts as to what Officer Byrne would have testified to and that's included in the references. If you go through the first couple of pages of Judge Madonia's order, you can see that he points out all those things that we have. I don't want to spend a lot of time doing this. I can go back and look, but I didn't find anything. When you say there was an agreed statement of facts as to what Byrne did, I don't see that anywhere. I think the agreed statement of facts included reference to what happened when Officer Byrne was at the scene. It was essentially agreed and stipulated that he called in the obstruction in the highway and then he just left. I'm looking at the October 7, 2024 stipulations of agreed facts. It's a two-page document. Is that what you're referring to? Yes. If I can jump in here on the same point for just a couple of minutes. You, counsel, also specifically say bottom of page 6, top of page 7 of your brief when Officer Byrne was on the scene responding to Tolliver's, and I'm not quoting exactly, accident, it can be assumed that he had his flashing police car lights on and or was blocking the pole with his car to prevent another motorist from hitting the pole like Mr. Tolliver did. He increased the risk of harm to plaintiff and other motorists when he left the scene entirely, meaning the pole was no longer guarded by his squad car and its flashing lights. My question is and was going to be where in this record is this evidence establishing the time he arrived or departed the scene of Tolliver's accident where he parked in location in reference to the downed light pole whether indeed he ever activated his emergency lights at that location whether he attempted to illuminate the scene or warn other motorists and so without such evidence how can we assume that Byrne took steps to guard the scene with his squad car but then removed this protection? These are kind of tough because you have to sort of come right at the individual asking the questions. With great respect Madam Justice, I don't think it matters. He could have. What we're saying is if you assume that he could have been there with the squad car he could have had lights lit but no accident happened while he was there but then it is conceded and stipulated that he left the scene without doing anything. Our client testified about what the scene was like so I guess the answer and again I mean it with respect it really doesn't matter. Those are all things that he could have done we do know that he undertook actions to get that pole out of the roadway and what he did do was negligent. Without his testimony how can you assume that he was authorized to do the things that you assume he could do? There are things that I don't know that you can actually infer without having direct testimony or evidence such as what he was driving at the time was it a marked vehicle, was he in his own personal vehicle? These are things that you're having to make a lot of assumptions to be able to get to those inferred facts that Justice Zinoff just identified. If I can answer that question that's a great transition to the five points I had notes to make and I got 13 minutes left what I'd like to do is answer that question and move on to one of those first things and that is there are five reasons why the case that you said the Castorino case doesn't apply and one of those why doesn't it compel us to hold the defendant as immunity here? One of those was just raised by Justice Harris you see we know how it did get moved away in the plaintiff's motion for summary judgment and in Jacob's deposition plaintiff's motion for summary judgment page 5 Jacob's deposition page 22-24 he just went out in the roadway and dragged it up into a lawn that was his testimony the possibility that an individual could show up at the scene and drag it up into the lawn shows that that was a problem that was easily solved here's the first reason why Castorino doesn't apply the facts were different Castorino involved dumpsters that had been on the roadway for weeks since mid-August accidents had happened in September they decided they weren't going to put any warnings up and then in October this accident occurred the facts are different in this case the police officer showed up at a pole that's in the middle of the street the trial judge's anticipation of a highly foreseeable nature of the injury is key here and also the fact that this is not a situation that involves an administrative decision by the municipal entity it involves what the police officer did in Castorino there was no negligent action there was no conduct the question in that case was limited by the cause of action to whether or not they should have put a sign up or a warning that brings us to the second difference this is a completely different cause of action we did not sue the city for failing to put up a warning sign or for failing to note that over three months there's a danger and they should have warned motorists about it or like West where there's a dangerous intersection and the directional signs seem to be conflicting that is negligence in putting up signs and that's where the immunity applies this is a cause of action for negligent undertaking and for conduct what our claim here is we know there is conduct that could have been performed at the scene of the occurrence just like Jacob should grab the pole off the highway but the police officer just left so can I interrupt you there please bookmark where you're at so you can get back to it this being a bench trial so we're not dealing with jury instructions which would frame the issues on appeal if there was an adverse judgment with a bench trial you're dealing with the allegations of your amended complaint that's the template that we have to look to to identify what the cause of action is here so I'm looking at the amended complaint and the allegations what specifically then not related to warnings what specifically is contained in the amended complaint that identifies the actions or the omissions if it's an omission that forms the basis for the city's liability as established by the evidence I had that called up on my other screen and I anticipated the question and here's what the allegations are amended complaint paragraph 5 the city and its employees were notified there was a movable obstruction on the roadway that previously caused a traffic accident paragraph 6 upon receiving notice of the instruction the city undertook to make a correction and number 7 they negligently undertook an effort to correct the obstruction so the allegations of the complaint as were clearly understood by Judge Madonia because he put his finger right on this but clearly this was a cause of action for a negligent undertaking we also know Judge Madonia knew this because he cited Pippin, Cross, and most importantly the grandfather of all these cases, Nelson what were the acts or omissions that comprised the negligent undertaking as alleged in the complaint the omission, your honor, is the failure to do anything there are 10,000 things that could have been done he could have dragged it off the street he could have, as Judge Neck suggested lit a flare, kept his car there called a circulating other patrol officer gotten out with a flashlight he could have, anyone who's ever pulled a boat or a U-Haul knows you can get out there you can get a chain around the tongue of the thing or the end of the light pole, and you move it 6 inches you go to the other side, you move it 6 inches the point is he did nothing when you say he, you're talking about Officer Byrne anyone from the city, correct well, various people responded so, from the city, we're talking about are you talking about the city water and light employee when you're talking about this you're talking about Byrne yes, the person who discovered the condition and did nothing and left the scene so, in paragraph 8 of the amended complaint in subparagraphs A through F are you talking about Byrne in those subparagraphs where you're where you're specifying the acts or omissions of the defendant I am talking about both Byrne and people at the city that didn't get somebody else out there early enough, and let me explain how Byrne, subparagraph D, Byrne left the light pole on the street where it was initially found without changing its position the city failed to rectify a dangerous condition they called a guy at home he took from 227 to 305 or something like that to get there through its agents and servants, the way they responded they responded at a time when people had simply left the street out, where people had left the light pole out in the street entirely on its own so again, the second reason why casinated doesn't apply is because the cause of action here is different negligent undertaking, I think that's an important point and I think the judge also made it a note one of the things the city argued is there was no reliance the judge addressed this at the trial level and it also was germane right here in our discussion but counsel, because there's a negligent or maybe a negligent undertaking, doesn't mean that there can't be immunity correct? I mean, one doesn't exclude the other, and if we're talking about immunity notwithstanding any omissions with respect to a voluntary undertaking why doesn't West, let's talk about instead of Castorino, let's talk about Supreme Court opinion in West why doesn't that compel immunity here for the city? For the same reason, because West involved and this is my fourth reason why casinated doesn't apply and West doesn't either because West involved a period of time when the city or the municipality had an opportunity to exercise operation of government decisional making, administrative judgment discretionary function, those are all things that involve a period of time in those causes of action and the statute applied to a circumstance where they didn't put up a sign and that's what the allegation of negligence was the statute applies to putting up or not putting up a sign and the statute tells us that if you don't put up a sign, you have immunity for that. This is not a case in which we claim the city was negligent for not putting up a sign we're claiming a Nelson versus Union wire rope claim. That is that you undertook to do something and using the common language, you screwed it up. When you undertook Nelson gave the city an obligation to do that properly and when they do that improperly, look, I recognize it's a dangerous situation, I'm going to call it in, I'm going to get somebody to come out here and move it but then I'm going to go home and have a cup of coffee that shows the doing of nothing is negligence back to the point I was making, if I can jump back and I know I'm running out of time, I'm very sorry, but if I can jump back the city's argument that the plaintiff did not rely on that flies in the face of Nelson. It also flies in the face of West because West talks about whether or not putting up a sign is appropriate. Nelson talks about whether or not people have a right to rely on what you do or what you undertake. The court highlighted in black ink the law defendant's liability for negligent performance is distinguished from a failure to perform. It's not limited to such persons as might have relied on the act but instead extends to such persons as defendant could reasonably have foreseen would be endangered. Madam Justice Zanoff, isn't this exactly the question that you asked? Isn't that really the question that you asked the city? The question that you asked the city is like you saying please explain why Nelson doesn't apply here and I appreciate the question I appreciate the opportunity to answer it and talk about it. My third reason that Castaneda or West doesn't apply is because this really didn't involve an administrative function and that is why the statute isn't applicable here and the next one is the solution is different. The solution at Castaneda is city council make a decision please. In West it's village you should put up a sign here and this case is you got this light pole covered and you're going to kill someone or they're going to lose a knee if you don't drag it off the road. The solution is different and that also takes it up and out of the realm of the statute. Finally, I'm going to make this one point. I got a couple of minutes left and then I'll clean up a couple of things. I think that when the court gave us those cases that was a great idea. It allows everybody to focus on really what the fulcrum is in this case right away and we've all been doing that. Let me suggest this. You said doesn't Castaneda resolve this case and I think learning council from the city did a great job both people sort of focused on that. Let me suggest that perhaps the court could also do this. The court could also say doesn't Pippin and Cross apply and instead of Castaneda, aren't Pippin and Cross v. Wells Fargo applicable? Madame Justice, another reason why the statute doesn't apply is because Cross v. Wells Fargo does. That says that the duty the responsibility for negligently undertaking conduct falls equally on municipalities and individuals. Cross also went on to expand the holding in Pippin. Pippin said you were negligent for hiring cruddy security guards. Cross said, you know, it's not just a negligent failure to hire that we're talking about here. The city was responsible once they undertook that. Once they undertook a duty, the city became responsible for results. Judge Madonia picked up on that in his order. You're not just supposed to do something, but you're supposed to do something right and that works. That's the whole and the city's argument here that also is why Castaneda applies less than Cross. It also explains why I understand that, Mr. Justice here I get your point about the deposition of a police officer and it's not being present, but I think the stipulated facts were sufficient for the judge to make the decision. It shows that the city undertook something and they literally just drove away. Go ahead. I was just going to ask you because you mentioned that Byrne should have dragged the pole off the road there and in the complaint plaintiff alleges that the defendant left the light pole in the street where it was initially found without changing his position and then Judge Madonia in his findings indicated that Officer Byrne left the pole across the southbound lane as it was before the first accident. So is it your argument that Judge Madonia found in plaintiff's favor at least in part that plaintiff had proven that allegation that the defendant left the light pole in the street where it was initially found and that it was Byrne's responsibility to have moved it? Yes. If I can explain my time's up. If I can just have a few more seconds. Here's why. Because Alexis Eddington gave testimony after looking at the drawings that the two investigating police officers made and she said, when I got out of the car, that's exactly where the pole was. The police officers reports were admitted without any hearsay objections and they were stipulated as reflecting evidence. Those two police reports, the police drew a place where the lamp was and my client got out of her car and saw it exactly there and she testified about that in some detail in front of Judge Madonia. Yes. Where I found the lamp post when I got out of the car is exactly where this officer drew it on his report and that's exactly where the person that was driving me home hit it. And that's how we established that it was left there without any action by Officer Burns other than recognizing the problem, trying to do something about it, making arrangements for the city to do something about it, making sure somebody was coming. But then he left it wide open on the street again. I think the facts are sufficient for Judge Madonia to have reached those conclusions and they were all unrebutted. All right. Thank you, Mr. Mr. Hampelman, a rebuttal argument? Yes. Thank you, Your Honors. So opposing counsel mentioned a few different classic voluntary undertaking cases. All those cases ultimately say that if you choose to act, you have to act with due care. Can I ask a question of you and just assume that the voluntary undertaking is established here. This relates more to the immunity question. If it's alleged that the defendant through burn negligently left the light pole in the street where it was initially found and Judge Madonia found that plaintiff had established that allegation through the evidence, would the defendant be entitled to immunity for that act? Your Honor, I would argue that as it relates to Section 3-104, that yes, Section 3-104 is an absolute bar regardless of how carefully or how carelessly the city Well, what part of that statute would operate to immunize the city for leaving the light pole in the street and not moving it? Because when I read 3-104, it's talking about warnings, signs, barriers. It's not talking about a failure to remove something. And Your Honor, that's where I would argue that West First Kirkham would clarify that that section of the statute, which is it stated that absolute immunity would apply after the 1986 amendments and that there's no notice or foreseeability exception as it relates to plaintiff's claim. But that allegation that I'm referring to has nothing to do with the initial placement or the maintenance of signs, barriers, devices that the statute references. So how can you invoke 3-104 in that scenario? That's the question I have. So your question, so I just want to make sure I'm trying to understand the court's question. I apologize. Let me rephrase it. It's alleged in the complaint that the defendant was negligent for leaving the light pole in the street. Judge Madonia seems to have found at least in part that the city that Officer Byrne left the pole across the southbound lane even though it had been recognized as a hazard and undertook and did not undertake to remediate it. And so you're saying that 3-104 immunizes the city for everything that plaintiff alleged. And I understand the claim as it's made regarding the failure to warn. But as to that specific allegation, how does 3-104 immunize the city, the failure to remove the pole? Because when you read 3-104, as far as I can see, it relates to a claim based on the failure to install signs, devices, barriers, and so forth. And, Your Honor, that's where I would fall back to the prior cases, the groundwork, more or less voluntary undertaking cases, which had established that the duty extends only to the extent of the undertaking and nothing more. For purposes of my question, I would argue that, yes, Section 3-104 does immunize the conduct because the city, again, did not do anything to raise the danger or to increase the danger that Ms. Eddington sought or that Ms. Eddington sought or that Ms. Eddington  or that Ms. Eddington sought or that Ms. Eddington sought or that Ms. Eddington  was, you know, going to see. And as a result, that the city should be the immunity of Section 3-104 should apply to the city as it relates in this case. Okay. Go ahead. Your Honor, I don't have much more time. I would just like to say, so, you know, opposing counsel cited Nelson, which is more about the common law duty to act with care once you undertake a task. But Wes makes it very clear that when it comes to, you know, traffic warnings, statutory immunity trumps any Nelson-style negligence analysis. So, if the city's action falls within Section 3-104, then Nelson doesn't even get out of the starting gate of the case. So, thank you for your time, Your Honor, and I appreciate it. Okay. Thank you, counsel. Thank you both. The court will take the case under advisement and will issue a written decision. The court stands in recess.